IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| RAYMOND DAVID WILSON, | ) | |
| | ) | Criminal No. 2:05-CR-279-DCN |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the court on petitioner Raymond David Wilson's motion to

vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255.

Respondent filed a response that included a motion for summary judgment.  The court

issued a standard Roseboro[1] order, which gave petitioner notice of his right to respond to

respondent's motion and the consequences of failing to do so.  Petitioner filed a reply

brief, requesting that the court deny respondent's motion for summary judgment and grant

petitioner's request for relief.  For the reasons set forth below, the court denies

petitioner's motion and grants respondent's motion for summary judgment.

## I.  FACTUAL BACKGROUND

On December 20, 2004, at approximately 3:30 a.m., a black male entered a

Charleston convenience store, pointed a gun at the sole cashier, Norris Reid, and

demanded money and packs of Newport cigarettes.  Reid handed the cash and cigarettes

to the robber, whose face was partially covered by a black and grey checked jacket draped

---

[1]Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

over his head.  His face was showing at times and partially covered at times.[2]  After

threatening to shoot Reid, the gunman ordered Reid into the store bathroom, grabbed two

twenty-four-ounce Miller Lite bottles of beer, and left the store.  Reid remained in the

bathroom for a short period of time and emerged to see a red Pontiac Grand Am driving

out of the store lot.

     Reid called the police.  He described the robber, and his clothing, firearm, and car

to a City of Charleston police officer.[3]  The description was radioed to other units, and,

within approximately ten minutes, a second Charleston police officer, Officer West,

spotted a red Pontiac Grand Am parked at a second convenience store a short distance

from the robbery scene.  Officer West initiated a traffic stop and petitioner was arrested

while trying to evade the stop.  Officer West testified that when petitioner emerged from

his still moving car and ran around a nearby house, he was wearing a black and gray

checked jacket and had a gun in his hand.  He searched the area and found a black

---

[2]Reid had an adequate opportunity to view the gunman during the course of the robbery.  The convenience store surveillance tape reviewed by the district court shows a well-lit store, that the robbery lasted one minute and forty-nine seconds, that Reid and the gunman were standing less than two feet apart during most of that time, and that five hand-to-hand exchanges took place between Reid and the gunman.

[3]Reid was not a casual observer.  He testified that he looked the perpetrator "in the face" and also observed his clothing and firearm.  United States v. Wilson, No. 06-4255, 2006 WL 3780623, at *4 (4th Cir. Dec. 20, 2006).  Reid's attentiveness is also evidenced by his detailed description of the gunman, his clothing, his weapon, and his car to police officers.  Reid's description of the gunman was not only accurate but "right on the money."  Id.  Reid told Officer Salkeld that the robber was a black male, approximately twenty-five years old, 5'9" to 5'10" tall, of medium build and complexion, and weighing between 150 and 180 pounds.  Petitioner is a black male, twenty-five years old, 5'9" tall, and weighs approximately 190 pounds.  Reid testified at trial that he was "sure" of his identification.  Id.

2

handgun beside a car.

Officer West removed $34.54 and approximately $50 worth of crack cocaine from petitioner's pockets.  Five packs of Newport cigarettes and two twenty-four-ounce Miller Lite bottles of beer were found in the front passenger seat of the Grand Am.  Following petitioner's arrest, Corporal Jim Byrne drove Reid to the arrest scene twice.  On the first visit, Reid identified the Pontiac Grand Am, the grey and black colored jacket, and petitioner.  On the second trip, Reid identified the .38 caliber gun recovered from the arrest scene.  The time from the robbery to identification was approximately twenty to thirty minutes.

## II.  PROCEDURAL HISTORY

On March 9, 2005, a federal grand jury returned a four-count indictment against petitioner for armed robbery, use of a firearm during and in relation to a crime of violence, possession of a firearm and ammunition by a convicted felon, and possession of crack cocaine.  On September 23, 2005, a jury found petitioner guilty on all counts of the indictment.  The jury verdict of guilty in this case, combined with his prior convictions, qualified petitioner as a Career Offender pursuant to the United States Sentencing Guidelines (USSG).  On February 9, 2006, this court sentenced petitioner to a term of 360 months in prison, followed by a five-year term of supervised release.

Petitioner subsequently appealed his conviction.  On December 20, 2006, the Fourth Circuit affirmed the judgment of this court.  Throughout all proceedings, Assistant Federal Public Defender (AFPD) J. Robert Haley represented petitioner.

3

On February 28, 2008, petitioner timely filed the present motion pursuant to 28 U.S.C. § 2255, requesting that the court vacate, set aside, or correct his sentence. In support of this motion, petitioner alleges he had ineffective assistance of counsel because his attorney: (1) allowed him to stand trial despite the fact that petitioner was incompetent, (2) failed to object to this court's "double counting" at sentencing (Mem. Supp. Mot. Vacate 2), (3) entered into stipulations with respondent at trial, (4) failed to request all discovery and Jencks Act materials from respondent, (5) breached the duty of loyalty owed to petitioner due to his prior working relationship with the Assistant United States Attorney (AUSA) prosecuting the case, (6) failed to investigate respondent's case and discuss the case and consult with petitioner, and (7) failed to object to the sufficiency of the indictment as it relates to the 18 U.S.C. § 924(c) count. As an eighth ineffective assistance of counsel claim, petitioner argues that the cumulative effect all of his attorney's alleged failures had a detrimental impact on the outcome of his case, and his attorney should have raised all of these issues on appeal. In addition, petitioner challenges his sentence on the grounds that count two of the indictment failed to state a codified federal crime and was "duplicitous" (Mem. Supp. Mot. Vacate 4), and respondent committed a constitutional violation by failing to disclose all discovery and Jencks Act materials to petitioner. On June 3, 2008, respondent filed a response in opposition and a corresponding motion for summary judgment. Petitioner subsequently filed a reply to respondent's summary judgment motion.

### III.  STANDARD OF REVIEW

Petitioner proceeds under 28 U.S.C. § 2255(a), which provides, in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

On a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, the petitioner bears the burden of proving the grounds for collateral attack by a preponderance of the evidence.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).  In deciding a § 2255 motion, the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  The court has thoroughly reviewed the record in this case and has determined that a hearing is not necessary.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  The nonmovant "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for

5

trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l

Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). Evidence should be

viewed in the light most favorable to the nonmoving party and all inferences drawn in its

favor. Anderson, 477 U.S. at 255. However, a mere "scintilla" of evidence will not

preclude summary judgment. Id. at 252.

## IV. PRO SE PETITIONS

        Petitioner is proceeding pro se in this case. Pro se complaints and petitions should

be construed liberally by this court and are held to a less stringent standard than those

drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert.

denied, 439 U.S. 970 (1978). Courts classify pro se pleadings from prisoners according

to their contents, without regard to their captions. United States v. Winestock, 340 F.3d

200, 203 (4th Cir. 2003). A federal district court is charged with liberally construing a

complaint or petition filed by a pro se litigant to allow the development of a potentially

meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction,

however, does not mean that the court can ignore a clear failure in the pleading to allege

facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387,

390-91 (4th Cir. 1990).

## V. DISCUSSION

        The Sixth Amendment to the United States Constitution guarantees that "[i]n all

criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of

Counsel for his defence." The right to counsel guaranteed by the Sixth Amendment

includes the right to the effective assistance of counsel. Strickland v. Washington, 466

6

U.S. 668, 686 (1984) (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)).  In

<u>Strickland</u>, the Supreme Court outlined counsel's responsibility to provide effective

assistance and established a two-part test for determining whether counsel was

ineffective.  Counsel is ineffective if:  (1) his efforts were objectively unreasonable as

measured against prevailing professional norms and (2) counsel's errors were prejudicial.

<u>Id.</u> at 688-94.  The court may consider either prong first and need not consider the other

prong if the first is sufficiently established.  <u>Id.</u> at 697.  Prejudice exists if there is a

reasonable probability that, but for counsel's deficient performance, the proceeding would

have had a different result.  <u>Id.</u> at 694.  A "reasonable probability" is "a probability

sufficient to undermine confidence in the outcome."  <u>Id.</u>

     The <u>Strickland</u> Court explained that "[j]udicial scrutiny of counsel's performance

must be highly deferential."  <u>Id.</u> at 689.  The Court was particularly concerned with the

temptation to evaluate the reasonableness of counsel's conduct using the benefit of

hindsight, a problem that reviewing courts should make "every effort" to eliminate.  <u>See</u>

<u>id.</u>  To correct the negative effects of after-the-fact second guessing, the Court instructed

that there is a "strong presumption that counsel's conduct [fell] within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption

that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'"  <u>Id.</u> (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)).  On the prejudice

prong, a petitioner must do more than show counsel's "errors had some conceivable

effect on the outcome of the proceeding."  <u>Id.</u> at 693.  Rather, as discussed above, the

petitioner has to present a reasonable probability of a different result absent counsel's

7

deficiencies.

### A.    Petitioner's Claims of Ineffective Assistance of Counsel

First, petitioner alleges that his counsel was ineffective for failing to request a

mental health evaluation and a competency hearing, and allowing petitioner to stand trial

and be sentenced while incompetent.  The test for competence to stand trial established by

the United States Supreme Court is "whether a criminal petitioner 'has sufficient present

ability to consult with his lawyer with a reasonable degree of rational understanding—and

whether he has a rational as well as factual understanding of the proceedings against

him.'"  Drope v. Missouri, 420 U.S. 162, 172 (1975) (quoting Dusky v. United States,

362 U.S. 402, 402 (1960)).

In support of this argument, petitioner offers his own affidavit, as well as

affidavits of his aunt, Lillian Rivers, and his uncle, Edward Mitchell.[4]  Petitioner's

affidavit states that shortly after AFPD Haley was appointed to represent him, petitioner

informed AFPD Haley that he "suffered from mental disorders," "was under medical care

in [his] past for these disorders," "received medication for these disorders," "was severely

abused throughout [his] childhood," and "needed to be treated for [his] mental disorders."

Def.'s Aff. 1.  The affidavit of Ms. Rivers states that once AFPD Haley was appointed to

represent petitioner, she relayed the following information to him concerning petitioner:

(1) he was diagnosed with mental disorders at a very young age; (2) he was diagnosed as

---

[4]Interestingly, both Ms. Rivers and Mr. Mitchell testified at petitioner's
sentencing hearing.  Ms. Rivers said nothing about petitioner's mental health, while Mr.
Mitchell alluded to petitioner being "fine as long as he was on his Ritalin."  Sentencing
Hr'g Tr. 15.  In addition, JoAnn Christopher and Kim Frasier testified, but neither said
anything about any mental health concerns regarding petitioner.

mildly retarded at a very young age; (3) he took prescription medication and received

treatment for his disorders until his early teenage years; (4) records, reports, and files

verify the use of medication and his treatment; (5) he was abused beginning at a very

young age; (6) his troubled life began when he quit taking the prescribed medication for

his mental disorders; and (7) petitioner was able to function normally when under the care

of a physician and while taking his prescribed medication. The affidavit of Mr. Mitchell

contains the exact same information, verbatim. Petitioner also contends that AFPD

Haley's own statements during petitioner's sentencing hearing acknowledged that

petitioner suffered from mental disorders.

     In response, respondent provides an affidavit of AFPD Haley, in which he stated

that

> in all of his dealings with the Defendant counsel was never given any cause
> to question the Defendant's competency to stand trial or his sanity at the time
> of the offense. Counsel had numerous discussions with the Defendant
> concerning his case, trial strategy, and his background and was never given
> any cause to question the Defendant's competency or sanity. The Defendant
> understood the charges against him, understood the evidence, was able to
> discuss trial strategy with counsel and throughout the trial participated by
> suggesting questions.

Haley Aff. 3. AFPD Haley also stated that he had "numerous discussions" with

petitioner's family members, and no one ever indicated that they believed petitioner to be

incompetent at the time of the trial or insane at the time he committed the offense. Id.

According to AFPD Haley, petitioner's family believed that someone else actually

committed the offenses for which petitioner had been charged. AFPD Haley also testified

that he obtained and reviewed a report prepared by Dr. Thomas W. Behrmann, M.D., on

November 15, 1998.  In the report, Dr. Behrmann diagnosed petitioner with adjustment disorder with depressed mood and mild (estimated) mental retardation.  The report states that petitioner was capable of understanding the nature of the charges against him and assisting counsel in his defense.  Although not contemporaneous with the federal offenses for which he is now incarcerated, the report notes that during the time frame of May 15, 1997, to August 1, 1997, petitioner had the ability to differentiate right from wrong and capacity to conform his conduct to the requirements of the law.

Respondent and AFPD Haley also make reference to petitioner's presentence report (PSR), prepared by the United States Probation Office.  Under "Mental and Emotional Health," the report states:

> Since his arrest, Wilson has been treated for depression at the Charleston County Detention Center.  He has been prescribed Prozac, but indicated he quit taking the drug approximately four months ago.  Before his arrest for the instant offense, Wilson denied experiencing any mental or emotional health problems and had not sought treatment.  Though no one in his family has a past history of mental health issues, Wilson was admitted to the University of South Carolina Psychiatric Unit when he was 11 years old, after contemplating stabbing himself.  Other than this brief hospitalization, he has not had any suicidal thoughts or ideation.  Throughout the interview conducted by the probation officer, he answered all questions thoroughly and appeared to be functioning in a cognitive manner.  Based upon the defendant not having a history of mental or emotional health problems, nor receiving treatment for the same, it appears that [Wilson] would not have any points of concern regarding this issue.

PSR ¶ 57.  Petitioner did not contest these facts at his sentencing hearing, and the court accepted them as true.

A review of petitioner's sentencing hearing transcript reveals, as petitioner suggests, that AFPD Haley stated that petitioner has a history of "mental or emotional

problems" (Sentencing Hr'g Tr. 9); however, the "problem" to which AFPD Haley refers

is Attention Deficit Disorder (ADD).  During the hearing, AFPD Haley stated that

petitioner suffered from ADD, for which his doctor prescribed Ritalin (Sentencing Hr'g

Tr. 7-10).  AFPD Haley could not offer the court concrete evidence that petitioner's

failure to take Ritalin caused him to the commit the crimes for which he was convicted,

but AFPD Haley asked the to court take into consideration petitioner's ADD and how that

may have affected his behavior.  At the sentencing hearing, AFPD Haley stated that

petitioner only provided this information after AFPD Haley's repetitive "digging and

prodding."  Sentencing Hr'g Tr.  7-8.

        In comparing petitioner's generalized allegations that he informed AFPD Haley

that he suffered from some form of "mental disorders" prior to trial, which are supported

by affidavits from petitioner and two of his family members, with the specific facts in

AFPD Haley's affidavit, the facts contained within a 1998 competency evaluation

conducted by Dr. Behrmann, petitioner's statements to a United States Probation Officer

as documented in the PSR, and statements recorded during the course of petitioner's

sentencing hearing, the court finds that AFPD Haley's determination that petitioner was

competent to stand trial was objectively reasonable, and more importantly, satisfies the

competency requirements articulated in Drope.  Petitioner is quick to point out that AFPD

Haley acknowledged his "mental disorders" at sentencing, yet he fails to address the fact

that the disorder with which he was diagnosed was ADD—a fact he admitted during the

sentencing hearing.  Sentencing Hr'g Tr. 18.  Petitioner also does not challenge AFPD

Haley's statement that he had to "dig and dig and dig" to get information from petitioner

11

regarding his mental and emotional health history.  Sentencing Hr'g Tr. 8.  At his

sentencing hearing, petitioner addressed the court.  He stated that, as a child, he was

sexually abused and contemplated suicide.  He said that he was diagnosed with ADD and

soon became a victim of peer pressure.  His father was then murdered, and he later lost

his mother.  The court does not discount the tragic events described by petitioner;

however, the court also cannot translate them into an indication of legal incompetency

where the facts show otherwise.  Consideration of the facts presented, as a whole, leads

the court to find that plaintiff was competent to stand trial pursuant to Drope and that he

fails to demonstrate that his counsel was ineffective under Strickland.  AFPD Haley's

actions and determination regarding petitioner's competency were objectively reasonable;

therefore, it is unnecessary to consider whether they were somehow prejudicial to

petitioner.

Second, petitioner claims that AFPD Haley was ineffective because he failed to

object to the court's "double counting" (more aptly described as triple counting) of his

convictions for armed robbery, use of a firearm during and in relation to a crime of

violence, and possession of a firearm by a convicted felon in his sentencing guideline

calculations.  Mem. Supp. Mot. Vacate 11.  Petitioner argues that under the Hobbs Act,

he was charged with armed robbery, which "penalizes a criminal petitioner, with an

enhanced penalty, for using, carrying and possessing a firearm during the robbery."  Id.

In other words, petitioner argues that the court should not be able to penalize him for use

of a firearm during and in relation to a crime of violence and possession of a firearm by a

convicted felon because he is already being punished for those offenses as part of the

12

armed robbery charge.

Petitioner's argument is without merit. Petitioner was convicted of four distinct offenses: armed robbery, use of a firearm during and in relation to a crime of violence, possession of a firearm and ammunition by a convicted felon, and possession of crack cocaine. The sentence assessed for the armed robbery conviction was not, as the petitioner alleges, enhanced for the use of a firearm. Rather, the penalty for use of a firearm in the commission of a crime of violence was assessed separately. A careful review of petitioner's PSR shows that petitioner's sentence was properly calculated according to the USSG. See PSR ¶¶ 19-52. He was classified as a Career Offender pursuant to USSG §4B1.1 based on his criminal history. PSR ¶ 47. In addition, he was convicted of violating 18 U.S.C. § 924(c) (use of a firearm during and in relation to a crime of violence). The combination of these factors, along with petitioner's failure to accept responsibility, resulted in a sentencing guideline range of 360 months to life. PSR ¶ 52. The undersigned sentenced petitioner to lower end of the range. Petitioner's sentence conforms to the range advised by the federal sentencing guidelines, and no double or triple counting occurred, thus AFPD Haley's failure to object to the correct calculation of petitioner's sentencing guideline range did not amount to ineffective assistance of counsel. Had AFPD Haley objected, the court would have overruled his objection because the United States Probation Office's calculation of petitioner's guidelines was correct.

Third, petitioner alleges that his counsel was ineffective for entering into stipulations with respondent at trial without discussing that course of action with

13

petitioner. He also appears to argue, in the alternative, that AFPD Haley consulted with him as to the stipulations, but he was mentally incompetent when he agreed to them. Def.'s Reply 5. Petitioner argues that his counsel improperly relieved respondent of its burden of proof regarding the following facts: (1) that the gas station that petitioner robbed sold items that moved in interstate commerce, (2) that the firearm and ammunition involved in the offenses traveled in interstate commerce, (3) that petitioner had prior criminal convictions, (4) that the evidence in the case was maintained in a proper chain of custody, and (5) that the laboratory results in the case were accurate.

In his affidavit, AFPD Haley testified that he consulted with petitioner prior to the admission of any stipulations. Haley Aff. 5. AFPD Haley also provided the following rationale for entering into the stipulations:

> [A] review of the discovery provided by the Government, and turned over to the Defendant, revealed that the gas station which was robbed sold gasoline and other items that had moved in interstate commerce, that the Defendant did have a prior felony record, that the firearm which was used in the robbery had been manufactured in Stratford, Connecticut, that the ammunition had been manufactured in East Alton, Illinois and Anoka, Minnesota, and that the rock like substance in Defendant's possession was .46 grams of crack cocaine. To challenge these matters would have been fruitless and would have drawn the jury's attention away from the defense that the Defendant was not the person who robbed the gas station. Moreover, to challenge the Defendant's prior felony record could well have resulted in the jury hearing that the Defendant had been previously convicted of strong armed robbery as well as being involved in another robbery.

Id. at 5-6. In addition, AFPD Haley's affidavit cites the relevant law on this issue:

> There are essentially two categories of decisions made by a criminal defendant's trial counsel: those decisions deemed "personal," that must be made with the defendant's consent and those that may be made without the defendant's consent. See [Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997)]. Decisions that may be made without the defendant's consent "primarily

14

> involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed. [United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)].

Sexton v. French, 163, F.3d 874, 885 (4th Cir. 1998).

Petitioner's allegations regarding the stipulations cannot support a claim for ineffective assistance of counsel. The court finds that Mr. Haley's decision to enter into the stipulations identified by petitioner was the result of sound trial strategy. Moreover, this court cannot conceive of any prejudice petitioner could have suffered as a result of these stipulations. The court will not address petitioner's alternative argument, in which he apparently claims that if he agreed to the stipulations, it was a result of his alleged mental incompetence. That issue has been adequately addressed above.

Fourth, petitioner alleges that his counsel was ineffective for failing to request all discovery and Jencks Act materials to which petitioner was entitled. Petitioner alleges that he did not have access to the prior statements or testimony of government witnesses, including grand jury testimony, and police investigative reports, all of which petitioner asserts could have been used for the purpose of impeaching respondent's witnesses.

Both respondent and AFPD Haley state that all discovery materials were provided by respondent to AFPD Haley. In his affidavit, AFPD Haley testified that all such materials were then provided to petitioner. AFPD Haley's affidavit and the docket reflect that AFPD Haley filed a First Motion for Disclosure of Intent to Use Evidence of Other Crimes, Federal Rule of Evidence 404(b); a First Motion to File Additional Motions; and a First Motion for Discovery Inspection and Inventory. Haley Aff. 7; Mot. Disclosure 1,

ECF No. 8; Mot. File Additional Mots. 1, ECF No. 9; Mot. Disc. 1-3, ECF No. 10. AFPD Haley also testified that he had "numerous discussions with Assistant U.S. Attorney Badger concerning this case and Mr. Badger maintained an open file." Haley Aff. 7.

Without identifying specific discovery materials that AFPD Haley failed to request, or that petitioner requested and did not receive, petitioner has no basis for an ineffective assistance of counsel claim. There is no evidence that AFPD Haley's actions were objectively unreasonable, or that petitioner suffered prejudice as a result.

Fifth, petitioner asserts that AFPD Haley was ineffective because his past working relationship with the prosecuting AUSA created a conflict of interest. Petitioner argues that "his counsel's duty and loyalty was swayed to the prosecution in this case, because of the closeness of their working relationship." Mem. Supp. Mot. Vacate 22.

AUSA Alston Badger and AFPD Haley acknowledge that they have known each other for a long time. They worked together in the Charleston County Solicitor's Office, and they have been adversaries in federal court for many years. Both AUSA Badger and AFPD Haley adamantly state that neither their professional nor personal relationship had any impact on AFPD Haley's committed and zealous representation of petitioner.

In Cuyler v. Sullivan, 446 U.S. 335 (1980), the United States Supreme Court "held that 'the *possibility* of a conflict is insufficient to impugn a criminal conviction.'" Stephens v. Branker, 570 F.3d 198, 208 (4th Cir. 2009) (quoting Cuyler, 446 U.S. at 350) (emphasis added). "To establish a violation of his Sixth Amendment right, 'a defendant who raised no objection at trial must demonstrate that an actual conflict of interest

16

adversely affected his lawyer's performance.'" Id. at 209 (quoting Cuyler, 446 U.S. at 348).

Petitioner has failed to provide anything more than a suspicion or possibility of a conflict of interest due to AFPD Haley's professional and personal relationship with AUSA Badger. Thus, the contention that a conflict of interest rendered AFPD Haley's assistance ineffective wholly lacks merit.

Sixth, petitioner alleges that his counsel was ineffective for failing to investigate respondent's case and for failing to discuss the case and consult with petitioner. Petitioner argues that AFPD Haley failed to consult with him on "any aspects" of his case. Mem. Supp. Mot. Vacate 25. Once again, petitioner asserts that counsel failed to provide discovery materials to him, and he also asserts that counsel would have recognized that he was suffering from "mental disorders or defects" if counsel had consulted with him regarding the case. Id. In his affidavit, AFPD Haley testified that he consulted with petitioner and discussed every aspect of the case with him. Haley Aff. 7.

Beyond the bare allegations above, petitioner fails to point to any issue of law or fact that counsel failed to investigate regarding respondent's case. Petitioner does not present any evidence that counsel failed to discuss the case with petitioner and that counsel's efforts fell below professional norms or resulted in prejudice to petitioner; therefore, petitioner's sixth allegation of ineffective assistance of counsel also must fail.

Seventh, petitioner alleges his counsel was ineffective for failing to challenge the sufficiency of the indictment. Petitioner argues that count two of the indictment, which charged petitioner with use of a firearm during and in furtherance of a crime of violence,

17

in violation of 18 U.S.C. § 924(c), fails "to state a codified federal crime" (Def.'s Reply 6) and is merely a "penalty/sentencing provision" (Mem. Supp. Mot. Vacate 38). Petitioner also argues that § 924(c) defines two separate offenses and petitioner was charged with both in a single count, thus the statute is "duplicitous and the general verdict slip that was provided to the jury regarding count two of the indictment, took away the Petitioner's right to a unanimous verdict." Def.'s Reply 6.

Petitioner is clearly mistaken regarding the characterization of § 924(c). That section proscribes conduct involving firearms and establishes corresponding penalties. It therefore addresses a substantive federal crime. Section 924(c)(1)(A) reads as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, *any person who, during and in relation to any crime of violence or drug trafficking crime* (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) *for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–*
>
> > (i) *be sentenced to a term of imprisonment of not less than 5 years*;
> >
> > (ii) *if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and*
> >
> > (iii) *if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years*.

(Emphasis added). In other words, a person can be charged with violating § 924(c) if, during the commission of a crime of violence, such as armed robbery, he either uses *or* carries a gun *or* possesses a gun in furtherance of committing the armed robbery. Petitioner apparently argues that § 924(c) is duplicitous because "using or carrying" a

firearm during a crime of violence and "possessing" a firearm in furtherance of a crime of

violence are two separate crimes that cannot be charged within a single count of an

indictment.  In fact, the indictment specifically charges, and defendant was found guilty

of, violating § 924(c)(1)(A)(ii), "brandishing" a firearm during a crime of violence.  An

individual brandishing a firearm simultaneously uses and possesses that firearm, making

petitioner's attempted distinction between the two irrelevant.  The indictment was

sufficient in that it charged petitioner with a substantive federal crime, and the statute was

in no way duplicitous and in no way adversely affected the unanimity of the jury verdict.

The court agrees with respondent's statement that "[t]rial counsel cannot be

faulted for failing to object to the sufficiency of the indictment when there is, in fact, no

deficiency in the [i]ndictment."  Resp. Opp'n 11-12.  Petitioner's seventh claim provides

no basis for an ineffective assistance of counsel claim.

Petitioner's eighth and final ineffective assistance of counsel claim is based on the

alleged "cumulative effect [AFPD Haley's] failures had on the outcome of this case" at

both the trial court and appellate levels.  Mem. Supp. Mot. Vacate 38.  This claim is

nothing more than a catch-all claim, encompassing all of the ineffective assistance of

counsel claims discussed above.  As all of petitioner's aforementioned ineffective

assistance claims have failed, so must this one.  Petitioner is simply unable to

demonstrate that AFPD Haley's representation at the trial court or appellate levels

amounted to ineffective assistance of counsel.

**B.      Petitioner's Remaining Claims**

Petitioner alleges two additional claims.  The first is that count two of the

indictment (use of a firearm during and in relation to a crime of violence, in violation of

18 U.S.C. § 924(c)) "failed to state a codified federal crime, and this Count was

duplicitous and the jury verdict could not be found to be unanimous."  Mem. Supp. Mot.

Vacate 27.  The second is that the government committed a constitutional violation by

failing to disclose all discovery and Jencks Act materials to the defense.  Both of these

claims have been discussed and rejected within the context of petitioner's ineffective

assistance claims above.  They merit no further consideration here.

## VI.  NO REASONABLE PROBABILITY OF A DIFFERENT RESULT

As noted above, the evidence connecting petitioner and the armed robbery was, to

say the least, overwhelming.  There exists no reasonable probability that absent counsel's

alleged errors (there were none), a jury could have come to a different result at the trial of

this case.  Therefore, as a general matter, petitioner is unable to establish the second

requirement of Strickland—that counsel's errors were prejudicial.

## VII.  CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 proceedings provides that the

district court "must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant."  A certificate of appealability may issue "only if the applicant

has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  An applicant satisfies this standard by establishing that reasonable jurists

would find that the district court's assessment of the constitutional claims is debatable or

20

wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). Here, petitioner does not meet this standard because there is nothing debatable about the court's resolution of his section 2255 petition. Accordingly, the court will deny a certificate of appealability.

## VIII.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that petitioner's motion to vacate, set aside, or correct his sentence is **DENIED**, respondent's motion for summary judgment is **GRANTED**, and a certificate of appealability is **DENIED**.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**March 30, 2011**
**Charleston, South Carolina**